NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

ESTHER CIABURRI, WIDOW (MICHAEL CIABURRI), PETITIONER, v. CARL SCHULER, RESPONDENT.

Decided February 14, 1941.

For the petitioner, *Nathan Rabinowitz.*

For the respondent, *Stanley V. Phares.*

\*     \*     \*     \*     \*     \*     \*

One James McKinnon, testifying for the petitioner stated that he is a plasterer and scaffold builder, and knew Michael Ciaburri, who was also a plasterer for six years; that on March 19th, 1940, both he and Ciaburri were employed by the respondent in a new building in Verona; that on that day, Ciaburri had plastered the ceilings of several rooms of the building and, at about two o'clock in the afternoon, was engaged in that work in the living room, standing upon a scaffold, built for him, a man of short stature, by the witness, which scaffold was about thirty inches in height, the ceiling being eight feet above the floor; that at that time Ciaburri held a hawk, described as a flat board with a handle underneath, which contained plaster, in his left hand, and a trowel in his right; that a supply of plaster, from which Ciaburri refilled his hawk, lay upon the floor of the scaffold; that in replenishing his hawk, Ciaburri put ten to eleven pounds of plaster on it; that at about the hour named, the witness, who was then in an adjoining room only seven or eight feet from Ciaburri, and saw him through an open doorway, heard the latter exclaim that he had a pain in his stomach; and that at that moment Ciaburri had the hawk (then containing plaster) and the trowel in his hands, one arm being in the air. The witness said also that he had worked with Ciaburri before, and knew his health to be good, but never saw him afterwards. On cross-examination, the witness said that the living room ceiling was six inches above Ciaburri's head; that the witness had built the scaffold, on which Ciaburri stood, in due relation to the latter's height; that on said March 19th, 1940, Ciaburri worked from eight A. M. to four-thirty P. M., and plastered five ceilings between those hours; and that on that day, he came from his home—about four miles distant from the Verona building—and returned to it, in a small truck. The witness repeats that when Ciaburri complained of pain, he had hawk and trowel in his hands; and said that he neither dropped them nor fell from the scaffold; and that the witness does not know how much plaster, at that moment, the hawk held. He identified a statement, marked *R-2,* as signed by him; says he did not

read the statement, but thinks an insurance company representative read it to him; and denies that he told the insurance company's representative that Ciaburri made no complaint.

Recalled, the same witness said that he and Ciaburri had their noon-day lunch in the unfinished Verona building on the day in question; that Ciaburri had sandwiches; and appeared at that hour to be all right.

Respondent offered in evidence, dated April 9th, 1940, a joint statement by Raymond Ford, a plasterer's helper, and the said James McKinnon, and signed by each of them, which statement is marked in this cause as *Exhibit R-2*. In that statement appears, among other things, the following:

"Mike" (meaning Michael Ciaburri) "did not say that he had any accident to either one of us. He did not make any complaint to either one of us. He did his work all right that day, quit at the regular hour, got dressed by himself and he drove his Chevrolet truck home. He never complained as long as he worked on this job."

McKinnon explains the statement by saying that the subject-matter in his mind was that of an accident—as a fall, and that no "accident," as he understood the term had befallen Ciaburri, and there had been no attendant outcry. I found no necessary repugnancy between the joint statement—at best a summary or digest of what, not one, but two, men were understood by the investigator to have said—and McKinnon's sworn testimony; and whether there be a necessary contradiction or not, I believe and find his oral testimony to be complete and true.

Esther Ciaburri, the petitioner, testified that she is the widow of Michael Ciaburri, and lived with and was supported by him; that he had long had a lump on his right side, and wore a belt many years; that he had worked steadily for a week before his death, and was in good health, and was so on the last morning he went to work; that on the day in question, he returned home in his truck at about four-thirty P. M., and had his hand on his side and seemed very sick, and immediately lay down; that the witness gave him water to drink; that the lump in his right side was greatly enlarged—

the size of a grapefruit—the witness' hand could not cover it—it was twice its former size; that his condition grew worse. Dr. Kinney was called in; about eight o'clock in the evening, a man from the insurance company called, and got a signed statement from him, in the presence of his sons.

On cross-examination, this witness testified that for about six months preceding his last employment, her husband, the decedent, had been out of work, and was well during the whole of the period, excepting a slight cold during one week; that since an operation, many years ago, he had worn, while at work, a padded belt, and had a lump on his right side; that on the day in question, he left home at seven-thirty A. M. for work, driving a Chevrolet truck, and returned sick before five P. M., holding one hand against his side, and steering his truck with the other; that he vomited twice when Dr. Kinney called. She repeats that his lump was double its former size.

Arthur Ciaburri testified that he lives with his mother (the petitioner), and was present when the insurance man took his father's statement. There was a stipulation by counsel that his testimony, if fully adduced, would be corroborative of that of the petitioner. Examined by respondent's counsel, he said that he had read and initialed his father's statement (*Exhibit P-1*).

When the witness, Edward Ciaburri, was sworn, counsel for the respective parties stipulated that his testimony would support his mother's (the petitioner's), and corroborate his brother, Arthur.

Dr. B. O. Kinney testified that he had practiced his profession in Little Falls, New Jersey, for twenty-four years, and about nine P. M. of March 19th, 1940, attended Michael Ciaburri at the latter's home in Little Falls; and found him confined to his bed with his wife and two sons present; that he received a history of the patient's case from the patient, which history ran to the effect that, while plastering during that day from a platform, he felt a pain in his side, and on lowering or taking off his trousers, saw a mass on his abdomen; that twenty years ago, he had a hernia after an appendix operation; that the hernia was as large as a walnut, and that he had since worn a flat belt; that the witness examined his

right side in the region of the scar, and found a strangulated hernia five or six inches long of ventral origin; that the witness knew by the palpitation, by the tenderness on pressure, that it was of recent origin; that the patient was in acute pain and vomited—results and symptoms of the recent strangulated hernia; that the witness gave him an opiate to ease his pain, and ordered an operation; that he knew the respondent, Schuler, and notified him, by telephone, of the strangulated hernia; that Schuler asked the witness to notify his insurance carrier; and that the witness complied by calling the Lumbermen's Mutual Casualty Company, and told it of Ciaburri's accident. Question of notice was not in dispute, respondent's attorney admitting compliance with statutory provisions. The witness further testified that he saw Ciaburri on the following morning (March 20th); that Ciaburri's work for respondent was the contributing cause of his strangulated hernia; that his work caused abdominal pressure; that there had to be protrusion somewhere, and that the hernia resulted. The witness said that he did not operate on Ciaburri.

On cross-examination, the witness testified that he had long been the Ciaburri family doctor, and that he is a general practitioner; that when he saw Ciaburri on the evening of March 19th, 1940, Ciaburri was confined to bed and conscious and rational; he repeated the history he obtained from Ciaburri—that the latter was in the act of plastering when he was seized by pain; that he had had a hernia on the right side twenty years before; that the witness made his diagnosis of strangulated hernia when he first saw Ciaburri on the night of March 19th; that his opinion was based on Ciaburri's vomiting and pains; that strangulation brings on vomiting; that the old hernia inconvenienced Ciaburri but little; that Ciaburri said he wore a belt on account of it; that the hernia observed by the witness was an aggravation of the old hernia, and was definitely a strangulated hernia of recent origin; Ciaburri's vomiting was a sign of the freshness of it; and so his pain and the observed mass; that the witness saw Ciaburri vomit during his call, and was informed that Ciaburri had vomited before his call. The witness further testified that the lifting

of the mortar board and the over-head reaching caused abdominal pressure and then caused the strangulation; that Ciaburri told him that, while doing his work, he reached overhead, and got pain in the act, and had continued pain when he quit work and observed the mass while in the basement of the house in which he was working. On redirect examination, he described the length of the mass as before, and again said that the strangulated hernia was an aggravation of the old hernia; and that the raising of the arm causes abdominal pressure.

Dr. Gerald Feigen testified that he is a surgeon, and has operated on all kinds of herniæ; he described a strangulated hernia; and said that a ventral hernia is subject to strangulation; that when strangulation occurs, vomiting follows within four to twelve hours. Answering a hypothetical question, he said that Ciaburri's work caused the strangulated hernia; that the act of overhead plastering causes abdominal pressure; that the earlier hernia was aggravated by Ciaburri's plastering and produced the strangulation; that his vomiting was caused by the cutting down of the supply of blood; that as the descent progresses, it produces pressure and cuts off the blood supply; and that the effort of plastering—in stretching, reaching and bending was sufficient to cause the abdominal pressure. Upon cross-examination, the witness stated that, in his opinion, in Ciaburri's case, the strangulation started at four or five o'clock in the afternoon; he said that when an aggravation of an old hernia occurs, it is not necessary to quit work at once; in the event of a new hernia, immediate cessation from labor may occur; that Ciaburri's stretching and bending in his work caused pressure on the abdominal wall; that when Ciaburri felt something descending, a change was occurring in the abdominal region— the hernia was enlarging as from the size of a walnut to that of a lemon; that from the facts assumed, the change occurred about two P. M. on the afternoon in question.

Dr. Briggs first qualified as an expert and, in answer to a hypothetical question, declared that Ciaburri's work in plastering aggravated his former condition; that his exertion caused the dropping of the hernia through abdominal pres-

sure, and effected the strangulated hernia; that the holding of the hawk and trowel could well have caused sufficient pressure on his abdomen; that his very expression of pain showed that the descent had started; that the descent takes time— from two P. M. to nine P. M. being a fair time; it is a variable matter, not a thing of fixed duration; he could have continued at his toil after the beginning of the descent, and was not obliged to stop at once.

On cross-examination, Dr. Briggs distinguished between the pressure resulting from the putting on the brakes of a car and the abdominal pressure produced by the effort of lifting a hawk and trowel—that stretching above one's head is quite a different kind of effort. He added that the expression of pain denoted the start of the descent, but his continuation in his work was not uncommon; he declared that the man's employment produced his trouble.

Dr. Siegal testified that, at the hospital, he was Ciaburri's attending physician and took his history on his admission, and assisted in his operation; and that in his, the surgeon's opinion, Ciaburri's employment caused his strangulated hernia.

Raymond Ford testified that he worked for respondent on March 19th, 1940, and mixed mortar for Ciaburri in the door yard of the Verona house, and carried it inside for Ciaburri's use; that he knew Ciaburri, and both quit work at four-thirty on the day in question; that he noticed nothing unusual about Ciaburri, nor observed his appearance when he drove off towards home; that he was present when McKinnon gave the insurance investigator a statement, and did not hear McKinnon speak of an exclamation by Ciaburri. On cross-examination he said that he was still in respondent's employment; that on the 19th of March, 1940, he kept for the most part twenty to thirty feet out in the yard; that Ciaburri would fill his hawk with twelve to thirteen pounds of plaster; that he, Ciaburri, would sweep the ceiling, trowel in one hand and hawk in the other; that he worked swiftly, covering eighteen inches in one sweep; that he did not see Ciaburri go down into the cellar, nor lift the hawk about his shoulder.

\*          \*          \*          \*          \*          \*          \*

Frank Schengert, the investigator of the insurance carrier, testified that he took McKinnon's statement, with Ford present, and that the witness set down what was said; and the alleged statement was admitted in evidence. On cross-examination, the witness further said that Dr. Kinney notified the insurance carrier of Ciaburri's injury and operation; that the witness saw Ciaburri on March 20th, 1940, in bed; that Ciaburri told him that he had had no accident, but a pain, while plastering the ceiling, at two or two-thirty P. M. on March 19th, 1940; he said that he got pain in his right side; the witness saw a large lump on Ciaburri and supposed it to be a hernia. The witness further said that Ciaburri had informed him that he had changed his clothes before going home.

Dr. Koppel, testifying for the respondent, found no causal relation between Ciaburri's work and death; the condition of the hernia was not affected by his toil; heavy exertion may aggravate a hernia—as the raising of heavy objects; when hernia descends, there will be pain; strangulation is the cutting off of blood supply; the time is variable; but prostration follows strangulation.

Dr. Clay testified that he took Ciaburri's history—a ventral hernia, and for a score of years before, a pre-existing hernia, which strain or exertion may aggravate; that the witness operated on Ciaburri on March 22d, 1940. In his opinion, the man's employment had nothing to do with his death; that there was no collapse in his case; that it takes six to eight hours for necrosis to occur; that there may be a descent without pain; and if the mass gets too large for the ring, then pain starts and collapse follows.

The hospital records were introduced in evidence, without objection.

The statement of decedent was produced by counsel for respondent on notice, without any objection but only with a warning by respondent's counsel that petitioner, if her counsel should inspect it, would be bound by it. Petitioner's counsel inspected it, and still without objection, offered it.

In the hospital record, in the testimony of James McKinnon, in the expert evidence produced on behalf of the peti-

tioner, in many circumstances corroborative of her case, I find and determine, after a careful comparison of all the competent evidence, excluding all hearsay, that on March 19th, 1940, Michael Ciaburri met with an accident and injury arising out of and in the course of his employment; that respondent received due notice of the accident and injury; see *Bryant* v. *Fissell,* 84 *N. J. L.* 72; 86 *Atl. Rep.* 458, that Ciaburri died as the result of his accident and injury on March 24th, 1940; and that the petitioner is his widow and sole dependent.

It is, therefore, * * * ordered that judgment be and same is hereby entered in favor of the petitioner and against the respondent.

* * * * * * *

JOHN C. WEGNER,
*Deputy Commissioner.*